Robert SULLIVAN, Appellant

v.

The STATE of Texas, Appellee.

Nos. 01–06–00953–CR, 01–06–00954–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 31, 2008.

J.C. Castillo, Houston, for Appellant.

Peyton Z. Peebles, III, Assistant District Attorney, Houston, for State.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

EVELYN V. KEYES, Justice.

A jury convicted appellant, Robert Sullivan, of two separate causes of intoxication manslaughter.[1] The court assessed punishment at 15 years in prison in each cause, with the sentences to be served concurrently. In two points of error, appellant argues that the trial court erred (1) in admitting a State's exhibit in violation of the hearsay rule, the right of confrontation, and the right of cross-examination and (2) in making an affirmative finding that appellant's vehicle was used as a deadly weapon.

We affirm.

## Background

At approximately 1:00 a.m. on October 2, 2005, appellant was driving on a Harris County road in his white Chevrolet pickup truck. Courtney Jacobs was on the same road and traveling in the same direction as appellant. Jacobs testified that appellant's white pick-up truck swerved side-to-side several times before eventually crossing over the road's center line into oncoming traffic and striking a green Mazda. The driver and passenger of the Mazda, Willie Williams and his fiancee Earlene Grigsby, respectively, were killed on impact.

At the scene, appellant admitted to authorities that he had consumed about three

---

1. *See* TEX. PEN.CODE ANN. § 49.08 (Vernon Supp. 2007). Appellate cause number 01–06–00953–CR; trial court cause number 1044709. Appellate cause number 01–06–00954–CR; trial court cause number 1044708.

beers a few hours before the accident. After appellant was taken to a local hospital, medical personnel drew a blood sample and estimated appellant's blood alcohol level to have been between 0.18 and 0.20 at the time of the collision—more than twice the legal limit.

After the jury found appellant guilty of intoxication manslaughter in both causes, appellant chose to have the trial court assess his punishment. The trial court made an affirmative finding that appellant's car was used as a deadly weapon and assessed punishment at 15 years in each cause, to be served concurrently.

## Admission of Evidence

In his first point of error, appellant contends that State's Exhibit 54A was admitted into evidence in violation of: (1) the right of confrontation and cross-examination and (2) the hearsay rule.

State's Exhibit 54A is a copy of one page of medical records, entitled "Substance Abuse Consult." The consult was taken in July 2005, before appellant underwent surgery at Ben Taub General Hospital. The document contains the notes of Kim Jackson, a substance abuse counselor, regarding appellant's history of drinking. Specifically, the notes indicate that appellant had a 40–year history of drinking six to eight beers a day and that appellant was counseled on the dynamics of addiction. At trial, appellant confirmed the notes were in his medical records, but stated that his daily beer consumption was two to three beers a day and that he did not recall answering Jackson's questions. Appellant objected that the notes were hearsay and that their admission into evidence violated the Confrontation Clause.

On appeal, the State responds that the notes were properly admitted into evidence because they are non-testimonial in nature and were recorded in the normal course of business dealings at the hospital. Additionally, the State contends that the exhibit served as impeachment evidence because appellant testified that his daily beer consumption was two to three beers a day.

### Standard of Review

 This court reviews *de novo* a trial court's legal ruling to determine whether out-of-court statements are admissible under the Confrontation Clause. *See Wall v. State,* 184 S.W.3d 730, 742–43 (Tex.Crim. App.2006) ("[T]he issue of whether an out-of-court statement . . . is 'testimonial' under *Crawford* depends upon the perceptions of an objectively reasonable declarant"). The standard of review for a trial court's admission or exclusion of evidence in general is abuse of discretion. *Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim. App.1996). As long as the trial court's evidentiary ruling is within the zone of reasonable disagreement, an appellate court may not disturb it. *Id.* at 102.

### Confrontation Clause

In *Crawford v. Washington,* the United State Supreme Court held that the Confrontation Clause bars admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness, regardless of any other indicia of reliability attached to the statement (such as historical and firmly-rooted exceptions to the hearsay rule). 541 U.S. 36, 51–54, 124 S.Ct. 1354, 1364–65, 158 L.Ed.2d 177 (2004). Although the Supreme Court declined to give a comprehensive definition of testimonial statements, it has stated that the term applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and [responses] to

police interrogations." *Id.* at 68, 124 S.Ct. at 1374.

■ Here, at trial, appellant objected that Jackson's notes were hearsay and that their admission violated the Confrontation Clause without the possibility of cross-examination. In her notes, Jackson wrote:

> Substance Abuse Consult:
>
> 6–8 (12oz) beers most days-last was a week ago.
>
> 0 drugs 0 tobacco.
>
> No Family hx of substance abuse.
>
> . . .
>
> Pt counseled on the dynamics of addiction, medical aspects & 12 step recovery. Pt agrees he needs to stop drinking for health reasons & feels he can easily do this. He accepted handouts & counselor's card.

The statements recorded by Jackson do not fall under any of the categories of testimonial statements listed in *Crawford*. *Id.* (holding that the term testimonial applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and [responses] to police interrogations"). Nor do the statements serve as "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial." *Id.* at 52, 124 S.Ct. at 1364. Moreover, the Supreme Court in *Crawford* suggested that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, *business records* . . . ." *Id.* at 56, 124 S.Ct. at 1367 (emphasis added). Numerous Texas courts have held that reports and business records are indeed non-testimonial in nature. *See, e.g., Mitchell v. State,* 191 S.W.3d 219, 221–22 (Tex.App.-San Antonio 2005, pet. ref'd) (holding that autopsy reports are non-testimonial business records); *Felix v. State,*

No. 05–04–01322–CR, 2005 WL 3163677, at *5 (Tex.App.-Dallas Nov.29, 2005, no pet.) (mem. op.) (holding that results of blood alcohol test are not testimonial); *Eslora v. State,* No. 04–04–00112–CR, 2005 WL 763233, at *4 (Tex.App.-San Antonio Apr.6, 2005, pet. ref'd) (mem. op.) (holding that medical records are not testimonial).

Accordingly, we hold that Jackson's notes are not testimonial and that their admission into evidence did not violate the Confrontation Clause.

### Hearsay Rules

■ Appellant next argues that Jackson's notes are inadmissible hearsay. *See* Tex.R. Evid. 802. The State offered the notes into evidence through the testimony of Willie Mae Barnes, the custodian of records for Ben Taub Hospital, who testified that records were made by a person with knowledge at or near the time of the treatment of the patient in the records.

As a general rule, hearsay evidence is inadmissible unless it falls within one of several exceptions. *See* Tex.R. Evid. 802, 803. "Hearsay" is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. *Id.* 801(d).

Rule 803(6) states that the following are not excluded by the hearsay rule:

**Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule

902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

Tex.R. Evid. 803(6). The business records exception to the hearsay rule is historical and firmly rooted. *See Garcia v. State*, 126 S.W.3d 921, 925–26 (Tex.Crim.App. 2004). Jackson's notes fall into the category of "Records of Regularly Conducted Activity." Appellant answered questions that were routine for a patient with a history of substance abuse problems checking into the hospital. The observations in the report memorialize Jackson's impressions of appellant's medical condition at that time, and it was normal for hospital workers to memorialize their notes in this fashion. The State properly sought the admission of Jackson's notes as a business record, and, at trial, appellant did not dispute the fact that they were his medical records. Accordingly, we hold that the trial court did not err in admitting Jackson's notes as an exception to the hearsay rule. *See* Tex.R. Evid. 803(6).

We overrule appellant's first point of error in both cause numbers.

### Deadly Weapon Finding

In his second point of error, appellant raises two sub-points. First, he contends that the evidence is legally insufficient to show that his vehicle was a deadly weapon. Second, he contends that the trial court erred in making the affirmative deadly weapon finding because the decision should have been made by the jury. We address these arguments in turn.

### *Legal Sufficiency of Deadly Weapon Finding*

■■■ In reviewing claims of legal insufficiency, we must view all the evidence "in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen.Code Ann. § 1.07(a)(17)(B) (Vernon 2003). To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained; and (3) that other people were put in actual danger. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App.2005).

■■■ Objects that are not usually considered dangerous weapons may become so, depending on the manner in which they are used during the commission of an offense. *Id.* A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Id.* Specific intent to use a motor vehicle as a deadly weapon is not required. *Id.* The deadly weapon statute does not require other motorists to be "in a zone of danger, take evasive action, or require the defendant to intentionally strike another vehicle in order to justify a deadly weapon finding" with respect to the defendant's vehicle. *Id.* at 799.

At trial, Stephen Wilson, M.D., a medical examiner in the Harris County Medical Examiner's Office, testified that multiple blunt force injuries as a result of a motor vehicle accident caused Earlene Grigsby's death. He testified that he was familiar with the definition of a deadly weapon and

that "a motor vehicle can be considered a deadly weapon, depending on how it's used. It can be, yes." The trial court also heard evidence that appellant had been drinking prior to the accident, and an eyewitness testified that appellant's truck swerved side-to-side several times before eventually crossing over the road's center line into oncoming traffic and striking the Mazda.

Appellant's manner of using his truck posed a danger to oncoming motorists that was more than simply hypothetical; the danger was real, and the manner in which appellant drove his truck made it capable of causing death or serious bodily injury, particularly when appellant drove on the wrong side of the road. *See id.* at 798. We hold that the evidence in this case, viewed in a light most favorable to the prosecution, supports a conclusion that a rational trier of fact could have found the legal elements of using a vehicle as a deadly weapon beyond a reasonable doubt.

### Judge as Affirmative Fact Finder

■ In his second sub-point, appellant contends that the trial court erred by entering a deadly weapon finding. As the record shows, the State made clear its intention to prosecute appellant for two counts of intoxication manslaughter with a deadly weapon. When presented at trial with the opportunity to object to removal of the special issue of deadly weapon finding from the jury, appellant affirmatively stated that he had no objection. However, after the jury's verdict of conviction on both counts of intoxication manslaughter, appellant objected, claiming that the deadly weapon finding should have been made by the jury and not by the trial court.

■ On appeal, appellant argues that the affirmative deadly weapon finding must have been made by the jury because the jury was the trier of fact. *See Barecky v. State,* 639 S.W.2d 943, 944 (Tex.Crim.

App.1982). When neither the indictment nor the jury charge contains any "deadly weapon" language, a trial court cannot enter an "implied" deadly weapon finding based solely upon its own assessment of the evidence and a general "guilty" verdict. *Lafleur v. State,* 106 S.W.3d 91, 95 (Tex.Crim.App.2003). When a trial court is not the fact finder, it does not have the authority to "find" implied facts that the jury did not expressly find. *Id.*

■ However, when, as in the current case, the trial court *is* the finder of fact in the punishment phase of the trial, it has the authority to make an affirmative finding. *See Fann v. State,* 702 S.W.2d 602, 604–05 (Tex.Crim.App.1985) (op. on reh'g) (holding that if trial court is trier of fact at punishment stage and it has heard evidence on issue, it has authority to make affirmative finding as to use or exhibition of deadly weapon if jury has not decided the matter). Here, the trial court served as the fact finder during the punishment phase of trial and the jury did not decide the deadly weapon finding. We therefore hold that the deadly weapon affirmative finding by the trial court was legally permissible. *See Vasquez v. State,* 25 S.W.3d 826, 828 n. 1 (Tex.App.-Houston [1st Dist.] 2000) (stating that "trial judge may 'make' an affirmative deadly weapon finding only when the judge is the trier of fact, either at the guilt phase or the punishment phase"), *aff'd on other grounds,* 56 S.W.3d 46 (Tex.Crim.App.2001); *Johnson v. State,* 712 S.W.2d 566, 567 (Tex.App.-Houston [1st Dist.] 1986, no pet.); *Sutton v. State,* 1999 WL 442187, at *2 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (not designated for publication) (holding that "because the trial court was the trier of fact at the punishment stage, the trial court had the authority to enter the affirmative finding").

We overrule appellant's second point of error in both cause numbers.

## Conclusion

We affirm the judgments of the trial court.