COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-032-CR

 

 

MITESH PATEL                                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM COUNTY
CRIMINAL COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

                                                    

                                              ------------

I.  Introduction








Appellant Mitesh Patel appeals his conviction for
driving while intoxicated.  In four
points, he argues that the trial court erred by[2]
(1) admitting blood samples without a proper chain of custody to show that the
blood was the same as that drawn from Patel and that it had not been altered,
(2) admitting hospital blood test results when they did not meet the required
showing for business records, (3) admitting the paramedics= records
when they were not proved separate from the hospital records, and (4) denying
Patel his right to cross-examination regarding the blood test results that were
admitted as part of the hospital records. 
We will affirm.

II.  Factual Background

On May 29, 2006, Patel drove two of his friends
to the Winstar Casino in Oklahoma.  They
took a twelve-pack of beer with them on the trip, and each person drank a beer
in the car before they went inside the casino to gamble.[3]  After gambling for a while, they left the
casino to go back to the car to drink another beer and then went back to the
casino continue gambling.  After one of
Patel=s
friends received a call that he needed to return to Fort Worth, the group left.








On the drive back, a car cut in front of Patel,
causing Patel to swerve and hit a cement barricade.  Patel suffered considerable injuries.  Police arrested Patel for DWI, and MedStar
transported him to John PeterSmith Hospital. 
Patel consented to a blood draw, and a nurse drew his blood.  The lab results revealed that the alcohol
concentration in Patel=s blood was .08 grams of ethyl
alcohol per hundred milliliters of blood. 

After hearing the above evidence, the jury found
Patel guilty of DWI.  The trial court
sentenced Patel to 120 days=
confinement, suspended the sentence, placed him on two years=
community supervision, and assessed a $550 fine.  This appeal followed.

III.  Blood Samples Were Properly Admitted

In his first point, Patel argues that the trial
court erred by Aadmitting the blood samples
without a proper chain of custody to show that the blood was the same drawn
from [him] without alteration or deletion.@  Specifically, Patel argues that the trial
court abused its discretion by admitting the results of a blood test into
evidence because there was an unexplained alteration of the blood test
specimen. 








The standard of review for a trial court=s
decision to admit or exclude evidence is an abuse of discretion standard.  Burden v. State, 55 S.W.3d 608, 615
(Tex. Crim. App. 2001).  The test for
abuse of discretion is whether the court acted without reference to any guiding
rules or principles, and the mere fact that a trial court may decide a matter
within its discretionary authority differently than an appellate court does not
demonstrate abuse.  Montgomery v.
State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  The appellate court will not reverse a trial
court=s ruling
on the admission of evidence as long as the ruling is within the zone of
reasonable disagreement.  Id. at
391 (op. on reh=g).








In order for the results of a blood test to be
admitted into evidence, a proper chain of custody of the blood sample that was
drawn from the accused and later tested must be established.  Durrett v. State, 36 S.W.3d 205, 208
(Tex. App.CHouston [14th Dist.] 2001, no
pet.); Avila v. State, 18 S.W.3d 736, 739 (Tex. App.CSan
Antonio 2000, no pet.) (proper chain of custody must be established to admit
the results of scientific testing). 
Proof that validates the beginning and the end of the chain of custody
will support the admission of evidence, barring any evidence of tampering or
alteration.  Stoker v. State, 788
S.W.2d 1, 10 (Tex. Crim. App. 1989), disapproved on other grounds by Leday
v. State, 983 S.W.2d 713 (Tex. Crim. App. 1998), and cert.
denied, 498 U.S. 951 (1990); Hall v. State, 13 S.W.3d 115, 120 (Tex.
App.CFort
Worth 2000), pet. dism=d,
improvidently granted, 46 S.W.3d 264 (Tex. Crim. App. 2001).  Without evidence of tampering or commingling,
gaps or theoretical breaches in the chain of custody go to the weight of the
evidence, not its admissibility.  Lagrone
v. State, 942 S.W.2d 602, 617 (Tex. Crim. App.), cert. denied, 522
U.S. 917 (1997); Silva v. State, 989 S.W.2d 64, 68 (Tex. App.CSan
Antonio 1998, pet. ref=d).  Additionally, a mere showing of the
opportunity for tampering or commingling, absent affirmative evidence of such,
is not sufficient to require exclusion of the evidence.  Darrow v. State, 504 S.W.2d 416, 417
(Tex. Crim. App. 1974); Dossett v. State, 216 S.W.3d 7, 18 (Tex. App.CSan
Antonio 2006, pet. ref=d).








Patel concedes in his brief that A[t]he
chain [of custody] has been established from beginning to end.@  Consequently, we will focus our analysis
solely on his contention that Athere is
clear evidence of an alteration of the specimen and evidence of possible
tampering.@ 
During the trial, Nurse Sherry Stephens testified that she drew three
vials of blood from Patel on May 29, 2006, and that she filled up each vial Ahalf
way.@  She identified her signature on the vials of
blood that she had drawn from Patel.  One
of the vials, State=s Exhibit 6, did not have as
much blood in it as the other two (State=s
Exhibits 7 and 8), but Nurse Stephens said that must have been all the blood
that she put in it.  She said that the
vial did not appear to have been tampered with in any way.  On cross-examination, Nurse Stephens admitted
that she could not tell if the vial had been tampered with.  Later, Elizabeth Van-Munchrath, a senior forensic
scientist with the City of Fort Worth Police Department Crime Lab, testified
that she analyzed blood from only one of the three vials and that she did not
analyze blood from State=s Exhibit 6.  She said that State=s
Exhibit 6 was half full when she received it and that she did not know what had
happened to cause the vial to be less than half full.  She later offered the explanation that the
nurse may not have filled up that vial. 
She testified that blood had not leaked out of the vial into the envelope
containing the three vials.

No affirmative evidence exists that State=s
Exhibit 6Cthe vial that contained less
bloodCwas
altered or tampered with.  At most, Patel
showed a mere possibility of tampering or alteration, which is insufficient to
require exclusion of the evidence.  See
Stoker, 788 S.W.2d at 10; Dossett, 216 S.W.3d at 21.  Because the State substantiated the beginning
and the end of the chain of custody for the vials and because no affirmative
evidence was offered to substantiate a claim for tampering or alteration of the
vial in State=s Exhibit 6, we hold that the
trial court did not abuse its discretion by admitting it.  See Williams v. State, No.
02-06-00416-CR, 2008 WL 1867979, at *10B11 (Tex.
App.CFort
Worth Apr. 24, 2008, pet. ref=d) (not
designated for publication) (holding that trial court did not abuse its
discretion by admitting swabs because chain of custody was established and no
affirmative evidence was offered to substantiate claim for tampering or
commingling when six swabs were admitted even though appellant claimed only
four were taken); see also Dossett, 216 S.W.3d at 21 (holding that while
there was speculation, there was no affirmative evidence that DNA test results
from a moldy sexual assault kit had been commingled, contaminated, altered, or
tampered with).








Moreover, as pointed out by the State, even if
State=s
Exhibit 6 was erroneously admitted into evidence, it did not harm Patel because
the blood in State=s Exhibit 6 was not tested.[4]  Patel=s blood
alcohol level was established by testing the blood from a different vial.  Thus, even if tampering of evidence existed
as to the less than half-full, untested vial of blood, that evidence is not
affirmative evidence that the vial actually tested had been tampered with.  We overrule Patel=s first
point.

IV.  Hospital Records Met Business Records
Exception

In his second point, Patel argues that the trial
court erred by admitting his hospital blood test results because the hospital
records did not meet the required showing for business records.  Specifically, Patel contends that the
hospital records did not meet the trustworthiness requirement of Texas Rule of
Evidence 803(6). 








Texas Rule of Evidence 803(6) provides that records
kept in the course of a regularly conducted business activity are not excluded
by the hearsay rule even though the declarant is available as a witness.  Tex. R. Evid. 803(6).  A document is properly admitted into evidence
under this rule if it is established the document was (1) made at or near the
time of the events they record, by or from information transmitted by a person
with knowledge of the events, and (2) made and kept in the course of a
regularly conducted business activity.  Id.  The necessary predicate for introduction of a
business record may be shown by offering either (1) the testimony of a records
custodian or other qualified witness, or (2) an affidavit that complies with
rule 902(10).  Id.; see also Tex.
R. Evid. 902(10).

The proper admission of the results of a blood
test, although proven up as a business record, also requires the proponent to
establish a chain of custody of the blood sample drawn and later tested.  Moone v. State, 728 S.W.2d 928, 930
(Tex. App.CHouston [14th Dist.] 1987, no
pet.).  In other words, the evidence must
establish that the blood tested was the blood taken from the person
intended.  This can be done, as set forth
above, by proving the beginning and the end of the chain of custody.  Stoker, 788 S.W.2d at 10.








Patel concedes in his brief that the State
established the chain of custody from beginning to end.  He argues in his second point that his blood
test results were nonetheless inadmissible as a hospital business record
because, according to Patel, no witness testified who drew his blood for the
hospital=s blood
test.  To support this argument, Patel
relies on Blaylock v. State, in which the trial court did not allow the State
to admit a blood test into evidence because no witness knew who took the blood
sample and no one established that the test results were made or recorded by a
person with knowledge.  No.
12-01-00295-CR, 2003 WL 60533, at *3 (Tex. App.CTyler
Jan. 8, 2003, pet. ref=d) (mem. op. denying reh=g).








However, the present facts are not like the Blaylock
facts.  As discussed above, Nurse
Stephens testified at trial that she was the person who drew Patel=s
blood.  Although most of her testimony
focused on the blood draw that she did for the police, at the conclusion of her
testimony, she was asked at what time she had drawn Patel=s blood;
she responded by asking, AThe blood draw we did for us
[JPS] or the officer?@ 
When the prosecutor specified that she wanted to know the time of the
blood draw taken for the officer, Nurse Stephens looked at State=s
Exhibit 2 and answered, AIt was at ten after 12:00.@  State=s
Exhibit 2 contains Patel=s hospital records, including a ADept. of
Emergency Medicine Trauma Flow Sheet,@ which
was completed and signed by Nurse Stephens. 
It documents a blood draw at 2300 hours[5]
and a blood draw at 0010 hours for the police. 
This four-page document appears to constitute Nurse Stephens=s
summary of all the procedures that she performed on Patel, including drawing
blood for both the police and the hospital. 
Thus, the record indicates that Nurse Stephens drew Patel=s blood.

Moreover, the record contains the State=s ANotice
Of Intent To Offer Business Records@ and an
affidavit from the custodian of records at JPS Health Network.  The affidavit is in substantially the same
format as that listed in Texas Rule of Evidence 902(10)(b), and the affiant
avers that the documents were kept in the regular course of business and that
it was the regular course of business for its employee or representative, with
knowledge of the act, event, condition, or opinion recorded to make the record
or to transmit such information.  Tex. R.
Evid. 902(10)(b).

Consequently, the requirements for the business
records exception to the hearsay rule were met, and the chain of custody was
established.  Thus, the trial court did
not abuse its discretion by admitting the hospital=s blood
test results, which were contained in the hospital records that met the
business records exception to the hearsay rule.  Durrett, 36 S.W.3d
at 211 (holding that trial court did not abuse its discretion by admitting
appellant=s medical records, which
included results from a blood specimen showing the alcohol content in his
blood, because chain of custody was proven from beginning to end).  We overrule Patel=s second
point.








V.  MedStar Records Were Not Admitted

In his third point, Patel argues that the trial
court erred by admitting records from the MedStar paramedics.  Specifically, Patel argues that the
paramedics= records were not proved up
separately from the hospital records.

At trial, the following occurred outside the
presence of the jury:

[DEFENSE COUNSEL]:  And, Your
Honor, also today when we came in, the State had given us a PSR Texas MedStar
records, and from what I saw in the file, there is not a business record
affidavit regarding these records, and even if there is, it contains rank
hearsay, denial of confrontation, and we=d ask -- and I don=t think the State was
going to go into that, the records.

 

[ASSISTANT DISTRICT ATTORNEY]: 
Judge, I wasn=t going to go into the
records.  We do have the paramedic here,
so the confrontation, that=s not going to be an issue.  The person who wrote that report is here, but
I don=t intend on introducing
those records.

 

THE COURT:  You=re not putting the
records in?

 

[ASSISTANT DISTRICT ATTORNEY]: 
No.

 

THE COURT:  Okay.  I assume that those are notes probably that
the paramedic is going to be testifying from. 
Is that what you=re saying.

 

[ASSISTANT DISTRICT ATTORNEY]: 
That=s correct.

 

THE COURT:  And you=re just giving those to
him in advance pursuant to time of cross-examination?

 

[ASSISTANT DISTRICT ATTORNEY]: 
Correct. 

 








State=s
Exhibit 2 contains hospital records, but Patel does not point us to any place
within those records showing that the records from MedStar were also
admitted.  Our review of the hospital
records does not reveal the inclusion of any MedStar records.[6]  Because the record does not reflect that the
MedStar records were admitted, we overrule Patel=s third
point.

VI.  Confrontation Right Was Not Violated








In his fourth point, Patel argues that he was
denied his right to cross-examination regarding the blood test results that
were admitted as part of the hospital records. 
Under Crawford v. Washington, however, business records are
nontestimonial hearsay.  541 U.S. 36, 42,
56, 124 S. Ct. 1354, 1359, 1367 (2004). 
Because the hospital records here were properly admitted under the
business records exception to the hearsay rule, their admission did not violate
Patel=s
confrontation rights.  See Sullivan v.
State, 248 S.W.3d 746, 750 (Tex. App.CHouston
[1st Dist.] 2008, no pet.) (holding that substance abuse counselor=s notes
on appellant=s history of drinking, which
were contained in medical records, were not testimonial, and their admission
into evidence did not violate the Confrontation Clause); Felix v. State,
No. 05-04-01322-CR, 2005 WL 3163677, at *5 (Tex. App.CDallas
Nov. 29, 2005, no pet.) (not designated for publication) (holding that results
of blood alcohol test are not testimonial); Eslora v. State, No.
04-04-00112-CR, 2005 WL 763233, at *4 (Tex. App.CSan
Antonio Apr. 6, 2005, pet. ref=d) (mem.
op., not designated for publication) (holding that medical records are not
testimonial).  We therefore overrule
Patel=s fourth
point.

VII.  Conclusion

Having overruled Patel=s four
points, we affirm the trial court=s
judgment.

 

SUE
WALKER

JUSTICE

 

PANEL: LIVINGSTON,
WALKER, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  May 21, 2009











[1]See Tex. R. App. P. 47.4.





[2]In setting forth Patel=s points, we mirror the
language he uses in his brief.





[3]Patel and one of his
friends had just turned eighteen that year, so they were not old enough to
purchase alcohol at the casino.





[4]It is unclear from the
appellate record whether Van-Munchrath tested the blood in the vial marked as
State=s Exhibit 7 or State=s Exhibit 8; but she
affirmatively testified that she did not test the blood in the vial marked as
State=s Exhibit 6.





[5]The hospital lab results
reflect that their specimen was collected at 2333 hours.





[6]Moreover, to the extent
Patel argues that information from MedStar=s records was incorporated into the hospital
records, Patel has not identified any specific information from the MedStar
records that was included in the hospital records.