**AFFIRM; Opinion issued February 12, 2013**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-10-01013-CR**

**MARLA KAY WILLIAMS, Appellant**

V.

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 3**
**Collin County, Texas**
**Trial Court Cause No. 003-89874-2009**

## OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion by Justice FitzGerald

A jury convicted appellant Marla K. Williams of assault and made a finding of family violence. The trial court assessed her punishment at 120 days' confinement, suspended and probated for two years, with the condition appellant would serve thirty days. In this Court, appellant challenges the trial court's admission of the complainant's medical records because appellant had no opportunity to confront the medical personnel who created the records. We affirm the trial court's judgment.

On the day after Thanksgiving in 2009, appellant and her cousin, Mary Danielle Hays, the complainant, got into an argument that turned violent. The argument began after the complainant discovered her shower curtain liner had a small cut in it and approached appellant,

telling her she thought her four-year-old son was responsible. Appellant became angry and insulted the complainant's autistic son. In response, the complainant asked appellant to leave the apartment, and when appellant made no effort to do so, the complainant began packing up appellant's belongings. Appellant yelled, jerked the items away from the complainant, and pushed the complainant into a wall.

As the complainant's nephew watched, the two women began shoving each other back and forth, with appellant delivering closed-fist blows. During this altercation, appellant hit the complainant in the nose with a closed fist. According to the complainant, she immediately knew that her nose was broken—it hurt badly, was crooked, and was caved in on one side. At trial, the complainant's nephew testified appellant had broken her nose, that it looked crooked to him and had a lot of swelling. Arriving after the altercation was over, the complainant's sister-in-law also observed that the complainant's nose was swollen.

Both women called 911. The complainant told the 911 operator that she was injured and, after initially declining medical help, asked for a paramedic because she believed the appellant had broken her nose. The complainant described her nose to the operator and claimed that it was "definitely broken," that she "could look in the mirror and tell," and that it had a cut and was blue and "caved in." Officer Alexander Bastida responded to the scene and observed that the complainant's nose was slightly offset, discolored, and appeared to be broken. The complainant went to the emergency room where officers took photographs of her nose and she underwent a CT scan, followed by surgery to repair her nose.

Soon after the altercation, officer Brandon Adams interviewed appellant. During this interview, appellant claimed that the complainant had assaulted her, showed the officer scratches on her neck and face, but failed to provide any details of how she was injured. Based on his

experience and the nature of the injuries, officer Adams believed appellant to have been the primary aggressor. The officers arrested appellant for assault.

At trial, the State offered the complainant's medical records from that emergency-room visit; the records had been timely filed with a business-records affidavit. Appellant objected that the records, if admitted, would violate her Sixth Amendment constitutional right to confront and cross-examine the witnesses against her.[1] Appellant argued that statements in the records by doctors and medical personnel were testimonial. The State argued the statements were made for purposes of medical diagnosis or treatment and thus were not testimonial. The trial court overruled the objection.

The record shows appellant made her confrontation objection to the multi-page medical-records exhibit as a whole but did not identify any specific statement or portion of the exhibit as objectionable. The State then extracted, without objection, one segment of the medical report relating to the complainant's CT scan, which was read to the jury:

> There is a leftward deviation of the nasal bones and a fracture at the base of the right nasal bone and a second fracture through the tip of the right side of the nasal bone. The fracture at the base is only displaced by 1 mm or less. This may be remote or acute.

It is well settled that when an exhibit contains both admissible and inadmissible evidence, the burden is on the objecting party to specifically point out which portion of the exhibit is inadmissible to preserve the issue. If a party who objects to an exhibit does not specify which part of the exhibit is not admissible, the error in admitting the exhibit is not preserved for review. *Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); *Brown v. State*, 692 S.W.2d 497, 501 (Tex. Crim. App. 1985); *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Crim. App.

---

[1] Appellant also objected that the records violated the hearsay rule. That complaint has not been urged on appeal.

3

1980) (op. on reh'g); *Reyes v. State*, 314 S.W.3d 74, 78 (Tex. App.—San Antonio 2010, no pet.); *see also Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995); *Smith v. State*, No. 05-09-01408-CR, 2011 WL 3278528, at *2 (Tex. App.—Dallas Aug. 2, 2011, pet. ref'd) (mem. op., not designated for publication). On the record before us, the issue has not been properly preserved for review.

Even if the confrontation objection had been appropriately specific, appellant's contention—that several statements in the complainant's medical records constituted "testimonial" statements—would have no merit. The Confrontation Clause of the Sixth Amendment bars admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). As a general rule, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007). However, we review constitutional legal rulings, including whether a statement is testimonial or non-testimonial, de novo. *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). Once appellant objected to the medical records on confrontation grounds, the State was required to establish that the records were admissible. *See De La Paz v. State*, 273 S.W.3d 671, 680–81 (Tex. Crim. App. 2008).

The United States Supreme Court has not defined "testimonial,"[2] but it has cited with approval "various formulations" of categories of testimonial statements, including:

> *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony,

---

[2] The Court has defined "testimony" as "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Michigan v. Bryant*, 131 S. Ct. 1143, 1153 (2011) (quoting *Crawford*, 541 U.S. at 51).

or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309–10 (2009) (quoting *Crawford*, 541 U.S. at 51). The Texas Court of Criminal Appeals has stated:

Generally speaking, a hearsay statement is "testimonial" when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*De La Paz*, 273 S.W.3d at 680; *see also Davis v. Washington*, 547 U.S. 813, 822–23 (2006) (same).

Appellant contends the State did not carry its burden to prove the medical records were not testimonial. She points out that the emergency room registration form reports the complainant was the "victim of a violent crime," and that a nurse's note reports the complainant said she was "assaulted" by someone she knew. Appellant notes that police were present in the emergency room when the complainant was examined, so the medical practitioners would have known they were "collecting evidence for a prospective prosecution." Appellant stresses that the segment from a doctor's report quoted was read to the jury and, therefore, the absent doctor was bearing witness.

We review appellant's arguments in view of *Melendez-Diaz*, wherein the Court stated that "[t]he Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits." 557 U.S. at 329. In that case, the affidavits at issue were three sworn certificates—prepared specifically for use at Melendez-Diaz's trial—that set forth the forensic analysis on bags of cocaine seized at the time of the defendant's arrest.[3] *Id.* at 308, 324. The

---

[3] The affidavits from analysts at the state laboratory stated: "The substance was found to contain: Cocaine." *Id*. at 308.

5

court pointed out that, under Massachusetts law, "the *sole purpose* of these affidavits was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance"; indeed, this purpose was printed on each affidavit. *Id*. at 311. However, the court specifically distinguished the affidavits offered against Melendez-Diaz from "medical reports created for treatment purposes, which would not be testimonial *under our decision today*." *Id.* at 312 n.2 (emphasis added). We do not view this statement as carte blanche for a trial court to admit into evidence, absent confrontation, any kind of legal or factual conclusion simply because it was contained in a medical report. By qualifying its statement with the phrase "under our decision today," the Court expressly limited scope of its holding and, thus, the admissibility of medical reports. The admissibility of any medical report must be decided with an appreciation for the ultimate purpose of the document. Significantly, the key distinction is clearly the purpose for which the statement or document was made. *See De La Paz*, 273 S.W.3d 671, 680 ("The primary focus in determining whether a hearsay statement is 'testimonial' is upon the objective purpose of the interview or interrogation, not upon the declarant's expectations.").

Because of this distinction, appellant's reliance on *Melendez-Diaz* is misplaced.[4] In that case, the challenged evidence was created specifically for prosecution purposes. In this case, however, the statements that the complainant had been the victim of a violent crime or had been assaulted were nothing more than the complainant's own reports of the source of the injury for which she was seeking treatment, not statements made specifically for prosecution purposes. The medical records are on forms with the name of the hospital, indicating that the hospital, not the police, produced the form and determined what information should be collected. In addition,

---

[4] Likewise, appellant's reliance on *Cuadros-Fernandez v. State*, 316 S.W.3d 645 (Tex. App.—Dallas 2009, no pet.), is misplaced. In *Cuadros-Fernandez*, this Court followed *Melendez-Diaz* in concluding that a DNA analyst's report and notes were prepared with the belief they would be available for use at a later trial. *Id*. at 657–58. No confrontation objection was raised in that case concerning medical records of the complainant or anyone else.

unlike the affidavits in *Melendez-Diaz*, there is no evidence that the medical records were turned over to law enforcement at the time they were created. Further, the State obtained the medical records only after applying for a subpoena duces tecum. Thus, the record establishes these records were prepared for treatment purposes. While appellant invites us to speculate as to the purpose of the police presence, we decline to do so. On this record, police presence without more does not establish that medical personnel were acting in concert with or cooperating with the police or that the records were created specifically for the purpose of prosecution.

Texas courts have unanimously followed the distinction made in *Melendez-Diaz*. *See, e.g.*, *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd) (concluding nurse's report of sexual examination made for treatment purposes was not testimonial); *Sullivan v. State*, 248 S.W.3d 746, 750 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding, in intoxication manslaughter prosecution, substance abuse counselor's notes were not testimonial where daily alcohol consumption listed). Appellant has presented no persuasive reason why we should hold otherwise today.

In addition, the State also argues that any error in admitting the statements at issue was harmless because their admission did not contribute to the conviction or punishment. We agree. TEX. R. APP. P. 44.2(a). What the medical records did contribute—that Hays's nose was broken—was not in serious dispute and was well established by other evidence. Specifically, Hays's own testimony, Hays's description of her nose to the 911 operator, photographs taken at the hospital, and the testimony of other witnesses summarized above constituted overwhelming evidence of bodily injury. And finally, it is important to note the State had the burden to prove only bodily injury as defined by section 1.07(a)(8) of the Texas Penal Code and as set forth in the court's instructions to the jury, i.e., "physical pain," not serious bodily injury as defined by

7

section 1.07(a)(46) of the Texas Penal Code, i.e., "bodily injury that creates a substantial risk of death or that causes . . . protracted loss or impairment of the function of any bodily member or organ." Thus, on this record, there is nothing to establish that the admission of the complained-of evidence caused appellant to suffer harm. TEX. R. APP. P. 44.2(a).

We decide appellant's single issue against her, and we affirm the trial court's judgment.

> /Kerry P. FitzGerald/
> _____
> KERRY P. FITZGERALD
> JUSTICE

Do Not Publish
TEX. R. APP. P. 47
101013F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARLA KAY WILLIAMS, Appellant

No. 05-10-01013-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 3, Collin County, Texas
Trial Court Cause No. 003-89874-2009.
Opinion delivered by Justice FitzGerald.
Justices O'Neill and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 12, 2013.

/Kerry P. FitzGerald/

KERRY P. FITZGERALD
JUSTICE