**Opinion issued February 6, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00312-CR

————————————

**KIRK ASA FREGIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Case No. 68,719

## MEMORANDUM OPINION

A jury found appellant Kirk Asa Fregia guilty of the second-degree felony offense of aggravated assault.[1] The jury also found at least two of the four felony enhancement allegations in the indictment to be true. In accordance with the habitual offender statute, the jury assessed appellant's punishment at 30 years in prison.[2] In one issue, appellant asserts that he received ineffective assistance of counsel during the guilt-innocence phase of trial.

We affirm.

### Background Summary

On August 18, 2012, appellant and his girlfriend, Dana, went to a wedding and then to a barbeque. Afterward, they returned home to Dana's house where the two had been living together for four months. When they arrived home, appellant took Dana's cell phone away from her and listened to her voicemail. Appellant became agitated when he heard a message left Dana's male friend. Appellant tore off Dana's dress and began punching her and throwing her to the ground. Dana escaped from appellant and ran outside, screaming for help and asking her neighbors to call the police.

---

[1] *See* TEX. PENAL CODE ANN. § 22.02 (Vernon 2011).

[2] *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2013).

At the time, Garrett Hough, who lived across the street from Dana, was in his front yard cutting down a tree. Before Dana came out of her house, Hough had heard yelling coming from Dana's house and what sounded, to him, like things being slammed against the walls. Hough saw Dana come out of her house and heard her ask for someone to call the police. He saw that she was upset and physically shaken.

Hough also saw appellant come out of the house and load items into appellant's truck. It appeared to Hough that appellant was packing to move out. Hough then saw appellant put a padlock on the front door of Dana's house. Hough did not see Dana and was concerned that she was still in the house. Hough crossed the street and approached appellant. Hough asked appellant where Dana was. Appellant did not respond. Hough then saw Dana coming out of another neighbor's house.

Dana told Hough that appellant had her cell phone and that she needed to get it back from him. Appellant had gotten into his truck, which was parked in the yard of Dana's house, and had started the engine. Dana's yard was fenced with the only exit being a gate, which was the width of one vehicle with approximately one or two feet to spare on each side.

Dana and Hough stood in front of appellant's truck and indicated to appellant that Dana wanted her cell phone. Appellant had one foot on the truck's

3

accelerator and the other foot on the brake. Appellant revved the engine and took his foot off the brake making the truck jump or lurch forward toward Dana and Hough. Appellant did this a number of times. Appellant yelled that he would kill Dana and Hough if they did not move.

The last time that appellant revved the engine, Dana and Hough were two feet in front of the truck. The truck came forward. Hough reacted by jumping straight up and pushing Dana out of the way. Hough was struck by the truck. Hough would later testify that he had jumped straight up when the truck came toward him because he was in the center of the gate opening and believed he could not move to the side to avoid being hit by the truck.

Hough landed on his knees on the truck's hood and grabbed the top of the hood by the windshield. Appellant sped out of the yard and onto the road with Hough hanging on to the hood. Appellant pulled back into the yard and began doing "donuts" or circles in the grass in an attempt to sling Hough from the hood. Appellant was yelling, "I'm going to kill you." Hough was yelling for appellant to stop the truck. Hough began punching the windshield with one of his hands and broke the windshield in two spots. Appellant stopped the truck. Hough jumped off and ran. As a result of the incident, Hough suffered scraped knees and bruising as well as cuts and puncture wounds to his hand.

Appellant was charged with the second-degree felony offense of aggravated assault. The first paragraph of the indictment stated that appellant had "intentionally or knowingly or recklessly cause[d] bodily injury" to Hough and that appellant had used or exhibited "a deadly weapon, namely, a vehicle, which in the manner of its use or intended use was capable of causing death or serious bodily injury by striking . . . Hough with a vehicle the defendant was driving." The second paragraph of the indictment further alleged that appellant had "intentionally or knowingly threaten[ed] . . . Hough with imminent bodily injury and . . . use[d] or exhibit[ed] a deadly weapon, namely, a vehicle, which in the manner of its use or intended use was capable of causing death or serious bodily injury."

The indictment also contained four enhancement paragraphs. The first two alleged that appellant had been convicted of two felonies on November 3, 1999. The third and fourth paragraphs alleged that appellant had later been convicted of two felonies on September 28, 2007.

Hough and Dana testified for the State regarding the events of August 18, 2012. Appellant testified in his own defense. Appellant's version of the events differed from that of Dana and Hough. Appellant admitted that he had assaulted Dana that day. He stated that he had packed his belongings into his truck to move back to his own home. He testified that he got into his truck and started to drive slowly throw the gate opening, which is very narrow. According to appellant,

5

Dana jumped in front of the truck and demanded that he return her cell phone. Appellant told her that it was in the house on the bed.

Appellant stated that Dana has moved to the side when Hough jumped on the hood of his truck. Before that moment, appellant had not noticed Hough. Appellant testified that Dana's and Hough's claims indicating that Hough had stood in front of his truck with Dana was a lie. Appellant testified that Hough began to scream, "He's tried to kill me! He's tried to kill me!" Appellant stated that it scared him when Hough jumped on his truck. As a result, appellant stated that he "gunned it," leaving a one-foot-long black tire mark on the road.

Appellant testified that another man, who he believed to be Hough's relative, tried "to get me through the window" as appellant was pulling out through the gate opening. Appellant stated that he rolled up the window, but the man broke the window. This also alarmed appellant, causing him to step on the accelerator.

Appellant testified that the man grabbed his steering wheel, sending his truck spinning into the grass. When counsel asked him if he was going in circles on purpose, appellant answered, "No. I was trying to get him off my truck." Appellant stated that he would periodically stop to try to get the man "to leave me alone." He said that he stopped the truck three or four times and told the man to get off his truck. Appellant stated that the man was clawing at his face and holding the steering wheel. Appellant testified that, during this time, Hough was on the

6

hood of the truck beating the windshield with two fists, causing the glass to break in two places.

Appellant claimed that he was driving slowly the entire time because he did not want to hurt Hough. Appellant stated that he also kept his foot on the brake the whole time. When asked if he had made the "donuts" with his truck to fling Hough off, he said that he had not. Appellant stated that he did not want to hurt Hough. But appellant admitted to spinning his wheels in the grass. He indicated that he did this to get the men off the truck but claimed that he spun the wheels with one foot on the brake while driving slowly. He claimed that this enabled him to be in control of the truck in case one of the men fell off. He stated that he did not want to hurt the men.

Appellant testified that he finally punched the other man in the face, causing the man to fall off the truck. Appellant stated that he stopped the truck so that he would not run over the man. Appellant stated that the man then got up and tried to drag appellant out through the window. Appellant stated that he then shifted the truck into park and started to get out of the vehicle. Appellant testified that Hough and the other man began to scream that appellant had a gun and ran away. Appellant stated that he did not have a gun or any other type of weapon that day.

Appellant testified that he did not intentionally or knowingly try to hurt Hough or the other man. He also stated that he did not recklessly try to hurt them.

Appellant also testified that he was in fear for his life that day. When asked why, appellant said it was because Hough is much larger than him and because Hough's behavior was surprising.

The jury found appellant guilty of the offense of second-degree aggravated assault, as charged in the indictment. The jury then found at least one of the enhancement allegations regarding appellant's 1999 felony convictions to be true and found at least one of the allegations regarding the 2007 felony convictions to be true. The jury assessed appellant's punishment at 30 years in prison.

Appellant did not file a motion for new trial. This appeal followed.

**Ineffective Assistance of Counsel**

Appellant presents one issue, complaining that he received ineffective assistance of counsel during the guilt-innocence phase. Appellant asserts that his counsel was ineffective because she failed to request either a jury instruction of self-defense or a jury instruction regarding the defense of necessity.

**A.      Applicable Legal Principles**

To prevail on an ineffective assistance of counsel claim, an appellant typically must show by a preponderance of the evidence both deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). Failure to make the required showing of either deficient performance or

8

sufficient prejudice defeats the ineffectiveness claim. *See Williams*, 301 S.W.3d at 687; *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

To show deficient performance, an appellant must demonstrate that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064; *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009). In our review, we indulge a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). We must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). "[T]he record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* at 143.

To show sufficient prejudice, the appellant must show the existence of a reasonable probability that, but for his attorney's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Lane*, 303 S.W.3d at 707. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

**B.    Analysis**

As stated, appellant claims that he received ineffective assistance of counsel at trial because his attorney failed to request either a jury instruction of self-defense or a jury instruction regarding the defense of necessity.  Appellant asserts that his counsel should have requested a charge on the right of self-defense against the complainant and a charge on self-defense against multiple assailants.

A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense.  *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987).  A defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

Pursuant to Penal Code subsection 9.31(a), a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.  TEX. PENAL CODE ANN. § 9.31(a) (Vernon 2011).  The actor's belief that the force was immediately necessary as described by this subsection is presumed to be reasonable if the actor:

(1) knew or had reason to believe that the person against whom the force was used:

> (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

> (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or

> (C) was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery;

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

*Id.*

A defendant is entitled to a charge on the right of self-defense against multiple assailants if there is evidence that, when viewed from the his perspective, the defendant reasonably believed "'that he was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant.'" *Frank v. State*, 688 S.W.2d 863, 868 (Tex. Crim. App. 1985) (quoting *Wilson v. State*, 145 S.W.2d 890, 893 (1940)).

Appellant also asserts that his trial counsel should have requested the jury to be instructed on the defense of necessity. The defense of necessity is available to

11

justify criminal conduct if (1) the defendant reasonably believes that his conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct; and (3) no legislative purpose exists to exclude the defense. TEX. PENAL CODE ANN. § 9.22 (Vernon 2011).

The doctrine of confession and avoidance applies to the defenses of self-defense and necessity. *See Juarez v. State*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010) (necessity); *Ex parte Nailor*, 149 S.W.3d 125, 132–34 (Tex. Crim. App. 2004) (self-defense). The Court of Criminal Appeals has been clear that, before becoming entitled to a jury instruction on the defenses of necessity and self-defense, the defendant must admit the act alleged and then produce evidence that supports the appropriate defense. *See, e.g., Juarez*, 308 S.W.3d at 399; *Ex parte Nailor*, 149 S.W.3d at 132–34.

To establish that appellant committed the offense of aggravated assault as alleged in the first paragraph of the indictment, the State was required to prove that appellant intentionally, knowingly, or recklessly caused bodily injury to Hough by using a deadly weapon, namely, a vehicle, to strike appellant. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1) (Vernon 2011) (defining simple assault); 22.02(a)(2) (Vernon 2011) (defining aggravated assault). At trial, appellant did not admit to all of the elements of the offense of aggravated assault, as charged in the indictment's

12

first paragraph. Specifically, appellant testified that Hough was not standing in front of the truck and denied seeing Hough. Appellant claimed that he did not strike Hough with his truck but instead claimed that it was Hough who jumped on the hood of his truck. Thus, appellant denied the mens rea element of the offense with respect to the allegations in the first paragraph.

Appellant does not premise his assertion on appeal that his trial counsel should have requested self-defense and necessity instructions as they relate to the allegations in the first paragraph of the indictment. Rather, appellant focuses on the aggravated-assault allegation as stated in the indictment's second paragraph.

To establish that appellant committed the offense of aggravated assault as alleged in the second paragraph, the State was required to prove that appellant intentionally or knowingly threatened Hough with imminent bodily injury and used or exhibited a deadly weapon, namely, a vehicle, during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2); 22.02(a)(2). The jury was correctly instructed that a "deadly weapon" means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2013); *Sullivan v. State*, 248 S.W.3d 746, 751 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Appellant asserts that he was entitled to self-defense and necessity instructions with regard to the charge of aggravated assault as alleged in the second

13

paragraph. At trial, the State indicated that the jury could find appellant guilty under the second paragraph based on the evidence showing that (1) appellant accelerated after Hough landed on the hood; (2) appellant continued to drive with Hough on the hood of the truck; and (3) appellant drove into the yard where he did "donuts" or circles in an attempt to fling Hough off the truck, which he was using as a deadly weapon.

At trial, appellant admitted to accelerating after Hough landed on the hood. However, appellant claimed that he had accelerated because he was surprised by Hough's jumping on the hood and then by the other man attacking him through the window. In other words, appellant claimed that his acceleration was a reaction and not a conscious choice. Appellant claimed that he turned into the yard because the other man was grabbing the steering wheel. Appellant stated that, after the initial acceleration, he was driving slowly, "barely crawling," while keeping his foot on the brake. He testified that he stopped three or four times to allow the men to get to off the truck. Appellant stated that he was driving in this manner to ensure that he did not hurt the men. Appellant did, however, testify that he wanted the men to get off his truck. He stated that is why he continued to drive after he stopped each time. Appellant also admitted to spinning his wheels in the yard to indicate to the men that they should get off the truck. However, appellant claimed that he spun his wheels with his foot on brake while driving slowly, which enabled him to stay

14

in the control of the truck in case one of the men fell off. In closing argument, appellant asserted that, because of the careful manner in which he was driving, he was not using a deadly weapon; that is, he was not using the truck in a manner capable of causing death or serious bodily injury. Thus, appellant arguably was not entitled to the defensive instructions because he did not admit to every element of the charged offense. *See Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007) (indicating that defensive instruction is appropriate only when defendant's defensive evidence essentially admits to every element of the offense but interposes the justification to excuse the otherwise criminal conduct).

In short, appellant asserts on appeal that he was entitled to the defensive instructions because he admitted to driving with Hough on the hood and to spinning his truck in circles, albeit in a safe manner, to encourage the men to get off his truck. He thereby admitted to conduct on which the State, in part, based the aggravated assault charge. He also points out that this conduct was justified because he claimed that he was in fear for his life that day.

Even if we presume that he was entitled to the defensive instructions, appellant has not shown that he received ineffective assistance of counsel at trial.

Counsel's performance will be sufficient if any strategic motive can be envisioned and will be considered deficient only if "the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159

15

S.W.3d 98, 101 (Tex. Crim. App. 2005). Here, although no motion for new trial was filed, a strategic motive can be envisioned as to why trial counsel did not request the defensive instructions of self-defense and necessity.

At trial, appellant choose to defend against the aggravated-assault charge by emphasizing that he acted carefully and with restraint when he was driving with Hough on his hood. Appellant testified that he was "barely crawling" as he drove with Hough on the hood, kept his foot on the brake, and stopped several times to let Hough off the truck. Appellant's counsel could have believed that requesting the defensive instructions would have undercut appellant's claim that he did not act forcefully, shifted the focus of the defense, and confused the jury. Counsel may have also reasonably believed that the instructions may have seemed inconsistent with appellant's testimony, thereby weakening his credibility.

We conclude that appellant did not meet his burden to satisfy the first *Strickland* prong; that is, he has not shown that he his counsel engaged in deficient performance when she did not request the trial court to instruct the jury regarding self-defense and necessity. *Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064. We hold that appellant has not shown that he received ineffective assistance of counsel at trial. *See id.*

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).