

# NUMBER 13-20-00014-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LUIS FERNANDO PUENTE,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                                     Appellee.

### On appeal from the 197th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellant Luis Fernando Puente seeks reversal of his conviction of four counts of possession of child pornography and one count of continuous sexual abuse of a child under fourteen. *See* TEX. PENAL CODE ANN. §§ 21.02; 43.26(a). Puente received a sixty-year term of confinement for continuous sexual abuse of a child and a ten-year term of confinement on each count of possession of child pornography, which will run

concurrently. By three issues, Puente contends that the trial court improperly (1–2) allowed testimony that violated his right to confrontation and constituted bolstering of a witness (issues one and two), and (3) denied his motion to suppress evidence (issue three). We affirm.

## I. ADMISSION OF TESTIMONY

### A. Standard of Review

We review a trial court's evidentiary ruling for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008). If the trial court's ruling is correct under any applicable legal theory and is reasonably supported by the record, we will not disturb that ruling. *Id.* at 418.

### B. Confrontation Clause

By his first issue, Puente contends that Sonja Eddleman, the State's expert witness, "simply regurgita[ted] the hearsay statements" from reports made by non-testifying nurses describing what the alleged child victims had said occurred. Specifically, Puente argues that the statements read by Eddleman during her testimony were testimonial; thus, the trial court violated his right to confrontation by admitting those statements.

#### 1. Applicable Law

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the Sixth Amendment confrontation right applies not only to in-court testimony but also to out-of-court statements that are testimonial in nature. 541 U.S.

2

36, 59 (2004). The Supreme Court explained that the Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify, and the defendant had a prior opportunity to cross examine the declarant. *Id.* at 68. This is so even if, the statement "falls under a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness." *Wall v. State*, 184 S.W.3d 730, 735 (Tex. Crim. App. 2006). Whether a particular out-of-court statement is testimonial is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

"Testimonial" statements are those that were made under circumstances which would lead an objective witness to reasonably believe that the statements would be available for use at a later trial. *See Wall*, 184 S.W.3d at 735. In other words, testimonial statements are made when the circumstances indicate that the interviewer's primary purpose was to establish past events to further a criminal prosecution. *See De La Paz*, 273 S.W.3d at 680. However, if the primary purpose of gathering the complained-of statements is something other than for a criminal investigation, "the Confrontation Clause does not require such statements to be subject to the crucible of cross examination." *Michigan v. Bryant*, 562 U.S. 344, 361 (2011). In general, statements made for medical diagnosis or treatment have a primary purpose other than the pursuit of a criminal investigation. *See id.* at 362 n.9; *see also Trejo v. State*, No. 13-10-00374-CR, 2012 WL 3761895, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 30, 2012, pet. ref'd) (mem. op., not designated for publication).

## 2.     Discussion

First, Puente generally complains of Eddleman's reading of statements the alleged child victims made to hospital personnel when each was examined after the alleged sexual assaults occurred. Puente argues that Eddleman's testimony violated the Confrontation Clause because she read out-of-court statements documented in reports by hospital personnel who did not testify at trial.[1] We note that Puente's argument focuses on statements read by Eddleman that were allegedly made by the alleged child victims and documented by hospital personnel in the medical reports.

During her testimony, Eddleman, a sexual assault nurse examiner who supervises other hospital personnel on her team, explained her role as follows: "So the team at Driscoll has social workers, forensic nurses, and two child abuse pediatricians, and I actually review all of their documentation and their care." When the State asked the trial court to designate Eddleman as an expert "in the area of forensic examinations, sexual assault examinations," Puente objected stating, "This witness is merely here for bolstering." The trial court overruled the objection and found her to be an expert.

Eddleman testified that the purpose of a sexual assault examination is to diagnose and treat the patient for any injuries. During Eddleman's testimony, the State offered, and the trial court admitted, the child victims' medical records. When the State offered the first child victim's medical records, Puente stated, "[N]o objection with regards to the documentation being submitted. I renew my objection with regards to this particular

---

[1] In the argument section of his brief addressing the confrontation-clause issue, Puente does not state specifically what testimony was admitted in violation of the Confrontation Clause and generally avers the trial court violated his right to confrontation when it allowed Eddleman's entire testimony regarding what was documented in the complainants' medical records after the alleged sexual assault.

4

witness commenting on these particular documents of which she . . . wasn't the one who did the exam." When the State offered the medical records of the second alleged child victim, Puente stated, "No objection, Your Honor. I'm not asking if this document has been on file, but I renew my objection as to this particular witness as bolstering."

Eddleman read from the medical reports prepared by hospital personnel that transcribed the statements made by the two alleged child victims during their medical examinations including, among other things, their medical history and details of the alleged sexual assaults, which the children claimed Puente committed. Specifically, Eddleman read the following, without objection: one child victim "stated, 'I remember he put his middle part in my back part, (and she indicated her anus by pointing), and my front part, (and she indicated her female sexual organ by pointing)[.] 'He' is [Puente]. He is my mom's sister's husband. He did it more than one time,' end of quote." Regarding one of the children's demeanor, Eddleman read the medical report as follows:

> She was described as cooperative. She speaks in complete sentences. She was a reluctant historian, which we use 'reluctant' for they're just not talking and talking, they're, like, pausing and deciding . . . if they're going to speak or not. And she had intermittent eye contact. And her mom said that she had a speech impediment and was diagnosed with a learning delay.

As to the second alleged child victim, Eddleman read, without objection, "[The child] said, quote, 'I was asleep, I think. I remember [Puente] touched me here (and she pointed to her genital area) with his hand, I think. It happened more than one time, but not a lot,' end of quote." Eddleman continued reading from the medical reports and testifying as to their contents, without objection.

5

To preserve error for a Confrontation Clause violation, the defendant must have objected at trial on that basis. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (explaining that to preserve an appellate complaint based on the Confrontation Clause, the appellant must have specifically informed the trial court that he was objecting on that basis); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004); *see also Cavil v. State*, No. 09-08-00049-CR, 2009 WL 2617780, at *3 (Tex. App.—Beaumont Aug. 26, 2009 pet. ref'd) (mem. op, not designated for publication) (concluding that appellant waived his Confrontation Clause issue because he did not object at trial on that basis) (citing *Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. ref'd)). However, Puente does not state in his brief where he objected on the basis that Eddleman's testimony violated the Confrontation Clause, and we find no such objection. Therefore, Puente failed to preserve this issue for our review.[2] *See* TEX. R. APP. P. 33.1.

Nonetheless, medical records created for treatment purposes and statements documented in medical records made for the purpose of medical diagnosis and treatment are not considered testimonial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312, n.2 (2009) (concluding that medical reports created for treatment purposes were not testimonial); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd) (holding medical records were non-testimonial); *Sullivan v. State*, 248 S.W.3d 746, 750 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (noting that numerous Texas courts agree that medical reports are non-testimonial); *see also Harding v. State*, No. 13-

---

[2] Puente does not identify in his brief any statements in the medical reports read by Eddleman that are testimonial, and we are not allowed by the Texas Rules of Appellate Procedure to make Puente's argument for him. *See* TEX. R. APP. P. 38.1(i).

14-00090-CR, 2015 WL 6687287, at *6–7 (Tex. App.—Corpus Christi–Edinburg Oct. 29, 2015, pet. ref'd) (mem. op., not designated for publication) ("[M]edical records created for treatment purposes are not testimonial."). Thus, even assuming that Puente preserved the issue, Eddleman's testimony did not violate the Confrontation Clause because the primary purpose of the complained-of statements that were documented by hospital personnel were to provide medical treatment to the complainants, and the records Eddleman read were created for the purpose of medical treatment. *See Sullivan*, 248 S.W.3d at 750; *Horner v. State*, 129 S.W.3d 210, 217 (Tex. App.—Corpus Christi–Edinburg 2004, pet. ref'd) (stating that the "exception for a statement made for purposes of medical diagnosis or treatment is 'firmly rooted,'" and, admission of such testimony under the medical diagnosis hearsay exception does not violate an appellant's right of confrontation); *see also Bryant*, 562 U.S. at 362 n.9 (explaining that when the primary purpose is something other than criminal investigation, "the Confrontation Clause does not require such statements to be subject to the crucible of cross examination" and stating that generally statements made for the purpose of medical diagnosis or treatment have a primary purpose other than the pursuit of a criminal investigation); *Garza v. State*, No. 13-19-00472-CR, 2021 WL 822301, at *5 (Tex. App.—Corpus Christi–Edinburg Mar. 4, 2021, no pet. h.) (mem. op., not designated for publication) (concluding that the appellant's right to confrontation was not violated when the trial court admitted medical records that were created for a medical purpose).

Moreover, the child victims testified at Puente's trial. Therefore, the trial court's admission of Eddleman's testimony regarding their statements in the medical reports did

7

not violate the Confrontation Clause because the complainants were subject to cross-examination at trial. *See Crawford*, 541 U.S. at 59; *De La Paz*, 273 S.W.3d at 680; *see also Oliva v. State*, No. 13-15-00609-CR, 2017 WL 2608280, at *7 (Tex. App.—Corpus Christi–Edinburg June 15, 2017, no pet.) (mem. op., not designated for publication) (finding no Confrontation Clause violation where the witness read from a report prepared by a non-testifying nurse because the statements read were allegedly made by the complainant, who testified and was subject to cross-examination); *Segura v. State*, No. 05-15-00032-CR, 2015 WL 8273712, at *5 (Tex. App.—Dallas Dec. 8, 2015, no pet.) (mem. op., not designated for publication) (determining that the Confrontation Clause had not been violated because the statements were made to a nurse for the purpose of medical treatment and not to further a criminal prosecution, and therefore, were not testimonial, and concluding in addition, that the complainant was subject to cross-examination); *DeLeon v. State*, No. 13-18-00480-CR, 2019 WL 4200297, at *4–5 (Tex. App.—Corpus Christi–Edinburg Sept. 5, 2019, pet. ref'd) (mem. op., not designated for publication). Therefore, the trial court properly allowed Eddleman's testimony. Puente's first issue is overruled.

## C.    Bolstering

Next, Puente argues that "[t]he trial court's rulings to admit inadmissible hearsay and hearsay upon hearsay from an expert witness amounted to improper bolstering of the complainants' testimony." Puente states, "Trial counsel objected numerous times to Eddleman, the [S]tate's expert, testifying and explicitly reading directly off reports created

8

by other individuals solely to bolster the complainants' testimony"[3] and argues "This type of repetitive evidence, is exactly what courts have held to be improper and inadmissible." However, this is the extent of Puente's argument.

At trial, Puente generally objected when the State asked the trial court to admit Eddleman's curriculum vitae, stating that he objected "to the exhibit to the extent that . . . this witness is going to be used to bolster somebody else's testimony" and later when the State offered Eddleman as an expert witness, stating, "This witness is merely here for bolstering. And to the extent that that's what I think she's here for, I would respectfully object." Puente also objected when the State offered the medical records during Eddleman's testimony by stating the following: (1) "Your Honor, before we proceed . . . just by looking at the documents [the prosecutor] has in her hand, I'm going to renew my objection with regards to bolstering just so that I don't waive anything"; (2) "[N]o objection with regards to the [medical records] being submitted. I renew my objection with regards to [Eddleman] commenting on these particular documents of which . . . she wasn't the one who did the exam"; and (3) "No objection [to admission of the medical records], Your Honor. I'm not asking if [these medical records have] been on file, but I renew my objection as to this particular witness as bolstering."

"'Bolstering' may . . . be understood . . . to be any evidence the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of [a] fact that is of

---

[3] Puente cites several pages from the reporter's record wherein he claims that this bolstering occurred. However, he does not specifically state which statements are objectionable and why. *See* Tex. R. App. P. 38.1(i).

9

consequence to the determination of the action more or less probable than it would be without the evidence.'" *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993). "Accordingly, evidence that corroborates another witness' story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally further tendency to establish a fact of consequence, should not be considered 'bolstering.'" *Id.*

As set out above, Puente generally cites to pages in the reporter's record wherein he states that he objected based on bolstering. Puente, however, does not explain how his objections preserve any error or how any statements by Eddleman constitute improper bolstering. Puente does not state why the trial court should have concluded that the *sole* purpose of any of Eddleman's testimony was to convince the jury that any of the witnesses or source of the evidence was worthy of credit, without substantively contributing "'to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *See id.* Puente does not explain how the trial court abused its discretion by allowing Eddleman to testify over these objections. And he points to no objections, and we find none, to specific testimony that could have bolstered any other witnesses' credibility. Moreover, when Eddleman read from the complainants' medical reports, Puente did not object on any basis. Accordingly, Puente has not shown on appeal that the trial court acted outside the zone of reasonable disagreement in this regard. *See id.*; *see also* Tex. R. App. P. 38.1(i) (explaining that the appellant must provide substantive argument with citation to appropriate authority to succeed on appeal); *Rivas v. State*, 275 S.W.3d 880, 886-87 (Tex. Crim. App.

10

2009) (stating that "[b]ecause of the multifarious origins of 'bolstering,' courts have found concern with it as an objection on its face[; thus, m]any appellate courts have cited the *Cohn* concurrence as authority to abandon 'bolstering' as a valid objection to preserve error for review" and noting that "the term 'bolstering' is slowly dying as an objection on its face" in part because of "its inherent ambiguity," but that "it has not yet expired, despite the fact that the term itself failed to survive the adoption of the Rules [of Evidence in 1998]"). We overrule Puente's second issue.

## II.   MOTION TO SUPPRESS

By his third issue, Puente contends that the trial court should have granted his motion to suppress evidence retrieved from his cell phone. The State responds that Puente did not have standing to challenge the seizure of his cell phone because he did not have an expectation of privacy at the place where the cell phone was found.

## A.   Standard of Review

We review a trial court's ruling on a motion to suppress for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). In reviewing a trial court's ruling on a motion to suppress evidence for an abuse of discretion, we use a bifurcated standard. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc) (citing *Guzman v. State*, 955 S.W.2d 85, 88 (Tex. Crim. App. 1997) (en banc)). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman*, 995 S.W.2d at 89). We "review de novo 'mixed questions of law and fact' that do not

11

depend upon credibility and demeanor." *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman*, 995 S.W.2d at 89.

In our review, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling if it is supported by the record. *Id.*

**B. Discussion**

At trial, Puente objected to the evidence obtained on his cell phone on the basis that the cell phone had been illegally seized; therefore, he argued that the evidence was fruit of the poisonous tree requiring suppression. The trial court held a motion to suppress hearing outside the presence of the jury.

At the suppression hearing, it was established that Puente's relative located Puente's cell phone at his brother-in-law's residence, and she then gave it to Ranger Patrick O'Connor.[4] It was further established that the officers acquired a search warrant prior to viewing the contents of Puente's phone. The State presented evidence that Puente did not reside at his brother-in-law's residence and that he had simply been a non-overnight guest when he either intentionally or accidently left his cell phone there.

---

[4] Specifically, Ranger O'Connor testified that Puente's wife informed him that Puente had a cell phone that he had left at his brother-in-law's residence after visiting. Ranger O'Connor stated, "After that, I talked to, his sister, [L.C.], and asked her if the phone was still there. She believed that it was. I followed her over to that residence, . . . and asked if I could have the phone, and then later she brought it out to me at that residence." Ranger O'Connor did not enter the residence himself. L.C. is the complainants' mother, and she testified at trial that she acquired the phone from her brother's, (Puente's brother-in-law), house.

During argument at the motion to suppress hearing, Puente stated that his mother had acquired the phone from his brother-in-law's residence. However, Ranger O'Connor did not make this statement and no such evidence was presented at the motion to suppress hearing.

The State argued that Puente lacked standing to challenge the seizure of his cell phone because Puente presented no evidence that he owned or had an interest in the residence where his cell phone had been found. Therefore, the State claimed he had no expectation of privacy. Puente countered that since his relative located his phone at a place where she did not reside, she did not have a right to enter the property.[5] The trial court overruled Puente's objection to admission of the contents of his cell phone and denied his motion to suppress.

Standing was the main issue at the suppression hearing. However, on appeal, Puente does not challenge this basis for the trial court's ruling. Instead, he argues that the officers lacked exigent circumstances to seize his cell phone.[6]

"A 'theory of law' is applicable to the case if the theory was presented at trial in such a manner that the appellant was fairly called upon to present evidence on the issue," and "[i]f the appellant fails to argue a 'theory of law' applicable to the case on appeal, that argument is forfeited." *State v. Copeland*, 501 S.W.3d 610, 613 (Tex. Crim. App. 2016); *Marsh v. State*, 343 S.W.3d 475, 479 (Tex. App.—Texarkana 2011, pet. ref'd) (stating that the appellant must challenge all of the grounds for the trial court's ruling on

---

[5] Puente referred to this relative as his mother; however, as previously stated, Ranger O'Connor stated that it was Puente's sister who provided the cell phone. However, L.C., Puente's sister-in-law, testified that she acquired the phone.

[6] At the motion to suppress hearing, in addition to arguing that Puente lacked standing to challenge the seizure of his cell phone, the State argued, in the alternative, that exigent circumstances existed, and Puente argued there were no exigent circumstances. Ranger O'Connor testified that Puente told officers that he had shown the child victim pornography "as part of the alleged crime in order to groom her to continue the crime. And so that would have been corroborating information, so you've got evidence inside that phone that we would like for the case." According to Ranger O'Connor, police officers "try to get the evidence as quick as [they] can. . . . [Y]ou've always got a potential for it to be lost, discarded, possibly tampered with. We always just want to get it as we can and get it in our custody that way we can preserve it." However, as it is not dispositive, we need not address this issue. *See* TEX. R. APP. P. 47.1.

13

appeal); *see also State v. Hoskins*, No. 05-13-00416-CR, 2014 WL 4090129, at *2 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (mem. op., not designated for publication) ("If even one independent ground fully supports the complained-of ruling or judgment, but an appellant does not assign error to that independent ground, we must accept the validity of that unchallenged independent ground, and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment."); *Johns v. State*, No. 14-11-00420-CR, 2012 WL 1899195, at *8 (Tex. App.—Houston [14th Dist.] May 24, 2012, no pet.) (mem. op., not designated for publication) ("By failing to challenge and adequately brief the basis for the trial court's ruling, appellant cannot demonstrate that the trial court abused its discretion in admitting the video interview into evidence."); *State v. Aviles*, No. 10-07-00371-CR, 2008 WL 976955, at *1–2 (Tex. App.—Waco Apr. 9, 2008, no pet.) (mem. op., not designated for publication) (explaining that because the State, as the appellant, failed to challenge each ground for the trial court's ruling granting a motion to suppress the issue was waived). Moreover, an appellate court cannot reverse on a legal theory not presented to trial court by the complaining party. *Hailey v. State,* 87 S.W.3d 118, 122 (Tex. Crim. App. 2002).

Here, Puente has not challenged all grounds relied upon by the trial court in denying his motion to suppress; accordingly, he cannot show that the trial court erred in denying his motion. *See Copeland*, 501 S.W.3d at 613; *Marsh*, 343 S.W.3d at 479;

14

*see also Hoskins*, 2014 WL 4090129, at *2; *Johns*, 2012 WL 1899195, at *8; *Aviles*, 2008

WL 976955, at *1–2. We overrule Puente's third issue.[7]

### III. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
17th day of June, 2021.

---

[7] We note that it is well settled that a non-overnight guest, such as Puente, has no reasonable expectation of privacy in a residence that he does not own or have a possessory interest. *See Villarreal v. State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996) ("American society is not willing to sanction as objectively reasonable the subjective expectation of privacy of someone who is in a residence under the circumstances presented in this case."); *Marsh v. State*, 01-04-00888-CR, 2006 WL 23420, at *2 (Tex. App.—Houston [1st Dist.] Jan. 5, 2006, no pet.) (mem. op., not designated for publication) (concluding that like in *Villarreal*, there was "nothing in the record to show that [the] appellant exhibited an actual subjective expectation of privacy in the residence" where the evidence was found "or that any expectations he may have had were of the types that society views as objectively reasonable" and noting that the "[a]ppellant admit[ed] in his brief that the residence was 'appellant's sister's house,' but offer[ed] no evidence to demonstrate that he had an actual subjective expectation of privacy in that residence.").

15