

# NUMBER 13-22-00145-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE GUSTAVO GARCIA-RODRIGUEZ,                                    Appellant,

v.

THE STATE OF TEXAS,                                    Appellee.

### On appeal from the 40th District Court of Ellis County, Texas.

# MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña**
**Memorandum Opinion by Justice Silva**

Appellant Jose Gustavo Garcia-Rodriguez was convicted of continuous sexual

abuse of a young child, a first-degree felony, and was sentenced to twenty-five years'

confinement.[1] *See* TEX. PENAL CODE ANN. § 21.02(b). On appeal, appellant contends that the trial court erred by denying his request for a lesser-included jury charge instruction and by "failing to require the jury to unanimously find that two or more acts of sexual abuse occurred over a period that was thirty days or more days in duration in the jury charge"; and the trial court abused its discretion in admitting medical records over appellant's Confrontation Clause and hearsay objections. We affirm.

## I. BACKGROUND

The indictment alleged that on or about November 1, 2016, through June 1, 2017, appellant committed two or more acts of sexual abuse against Paige,[2] a child then younger than fourteen years of age. The record reflects that Paige is appellant's niece, and she was in fourth grade, approximately nine years old when the alleged offenses began.

### A. Paige

Paige was fifteen years old at trial. Paige testified that in November of 2016, she was living in a trailer with her parents, Frederick and Nadine, and her two siblings, an older sister named Melanie and younger brother named Jonah. Appellant was also living with them, and shared a room with Jonah. At some point during the fall of 2016, Paige had fallen asleep one evening on the couch in the living room. Paige was awoken when

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] To protect the identity of the minor complainant, we use pseudonyms for her name and the names of her family members. *See* TEX. CONST. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. R. APP. P. 9.8 cmt.

she was joined on the couch. "I felt someone's hand going on my body," testified Paige. "[T]hey were touching my shoulder[;] they started going down my body where my vagina was. That's when the person had put their hand in there and started touching my lips." Paige recalled what she wore that night: a white tank top with leggings decorated with bright rainbow colors and sunflowers. Although Paige never saw appellant, she testified that she was certain it was him. Paige stated she tried to "close [her] legs tighter" to get appellant to stop, but he was undeterred and "kept pushing harder." Paige testified that he persisted for a "few minutes" and then stopped. "Months later," Paige was in "the same position" in the living room one evening when appellant arrived home drunk. This time, appellant touched her genitals over and under her clothing, stopping only when Paige's father awoke.

Paige testified to three other incidents, all occurring months after the first incident. Once, when appellant and Paige were eating out together, she caught appellant staring at her breasts with "this weird grin." In another instance, Paige was in the passenger seat while appellant was driving and during a red light, appellant placed his hand on her inner thigh but stopped short of touching her genitals. Paige also testified to another occurrence when she was lying down on her sister's bed after school, and appellant came in and asked her if she wanted to watch videos on his phone. Paige stated appellant then positioned himself behind her and placed his penis "flat on [her] butt" over her clothes. Paige said she felt too embarrassed to turn around, so she focused on the phone in front of her. Several minutes later, Paige heard her parents' vehicle pull up the driveway, and she ran out of the room. On recall, Paige clarified that the first incident, wherein appellant

3

had touched her genitals, occurred at the beginning of the fourth grade, and the last incident transpired between the summer of the fourth and fifth grade.

In 2018, in the beginning of her sixth-grade year, Paige told her then-boyfriend, Jonathan, that appellant had sexually abused her.[3] In November 2018, Paige outcried to her substitute reading teacher, who then put her in communication with the school counselor, Shea Edmonds. "[O]ne day, I just got so mad—[my teacher] pulled me out the hallway and she asked what's going on. That's when I opened up," Paige testified. "I felt like it was something that I was hiding for a long time[,] and it was just something I couldn't stand anymore. I couldn't stand seeing [appellant] in that house, just him walking all free, like he never did anything." On the day of her outcry, Paige and her siblings were taken to her aunt's home to stay there. A few days later, Paige was interviewed at the child advocacy center.

Paige testified that any relief she initially felt from speaking out on what had happened to her was quickly overshadowed by her family's reaction following appellant's arrest. "They made me feel like it was my fault, that, you know, I was young[,] and I was clueless." Paige testified that she started drinking alcohol, using marijuana, and cutting her wrists and inner thighs. Paige described feeling "disgusted" with her body and "trapped and . . . very alone" given her family's treatment of her. "I remember just wanting something to get off my mind or just wanting to feel something—or not feel anything," testified Paige. Paige stated she also felt as if family members "wanted [her] to lie," about

---

[3] Jonathan testified at trial, stating that Paige told him via a text message she had been "raped by her uncle," and the conversation continued in person. In each instance, Jonathan encouraged Paige to tell an adult but noted Paige's reluctance to do so. Jonathan testified, "[Paige] said that she was scared to[,] and she didn't want to."

4

what had transpired.

**B. Paige's Family**

Several family members testified at trial, including Nadine, Melanie, and paternal aunt Amy.

Nadine confirmed that the family wanted Paige to "drop the case" so appellant could be released and "move to Mexico." According to Nadine, in 2016, appellant was working long hours alongside Frederick and residing with them in their trailer. Nadine first learned of the sexual abuse allegations after she was contacted by child protective services following Paige's outcry at school. Nadine testified that she transported Paige to the hospital for an examination, and to-date, she had not been "brave enough" to ask Paige about the details of what had occurred. Nadine said that in retrospect, she had seen a change in her daughter's temperament in the fourth grade, before and after the allegations were said to have occurred.

Melanie testified that she had also noticed a change in her sister's behavior beyond what was to be expected for an adolescent. Melanie testified that when she was between fifteen and seventeen years old, an incident involving appellant occurred. Melanie stated that one evening she was by herself in bed and was woken up by "a touch on [her] thigh" and an aroma of beer. Melanie testified it lasted just a "few seconds" and then appellant walked off.

Amy also testified. Amy stated she and her family used to live "more or less" two hundred feet away from appellant and Paige. Amy testified that throughout the case, appellant has maintained his innocence. When asked what appellant told her had

5

transpired between him and their niece, Amy stated, "No, he didn't tell me that he had done what she says he did, just simply that one day he was tipsy and he sat on the sofa where [Paige] was, and he put his hand like this on [Paige's] leg, and when he wanted to get up, his hand fell between her legs" on top of Paige's vagina.

## C.    Professional Witnesses

Edmonds testified that she met Paige in 2017, when Paige was in the fifth grade. Paige had been sent to Edmonds' office for counseling preceding the outcry because she had been acting out in class. Edmonds said when Paige finally outcried about the sexual abuse, Paige was "very blunt." "When she was ready to spill what was bothering her, it just came out," testified Edmonds.

Following Paige's outcry, she was interviewed at the Ellis County Children's Advocacy Center and evaluated at Cook Children's Medical Center in Fort Worth. Paige was twelve years old at the time.

Ashley Wiedekher conducted a forensic interview with Paige and testified to Paige's statements regarding each incident of sexual abuse. Wiedekher's testimony was consistent with the testimony Paige provided at trial. Wiedekher further testified that Paige mentioned a second instance wherein appellant had touched her genitals "like the first time," but Paige did not provide any details apart from it occurring a couple of months after the first instance. After it was brought to Wiedekher's attention that Paige's father "had told somebody that she had said that it didn't happen, that that offense had not happened," Paige was interviewed by Wiedekher again on October 25, 2019. Wiedekher

6

testified that Paige denied taking back her initial statement and reiterated the facts of her initial statement.

Kineta Holsworth, a licensed professional counselor and advocacy center supervisor, testified to the normality of delayed outcries. "[A]bout 90 percent of kids who are sexually abused are abused by someone they know," testified Holsworth. According to Holsworth, delayed outcries are common when the perpetrator is living in the same home as the victim: "Children have a good concept of family and expectations[,] and they are aware that if they talk about what's going to—or talk about what has happened, then it's going to change things in their families, and children are typically afraid of that," explained Holsworth. Moreover, Holsworth stated that disclosures are "definitely not a one-time event in most cases," and children often "test the waters" to determine whether they will be able to trust the individual that they have chosen to tell.

Teresa Fugate, a forensic nurse, testified that she evaluated Paige at the hospital. At trial, the State sought to admit Paige's medical records as an exhibit. Appellant objected on the basis of "hearsay and bolstering," arguing that "the person who signed the [attached] affidavit"—the custodian of medical records for the hospital—was not present in court to testify. The trial court overruled appellant's objections and the exhibit was admitted. The medical records included Fugate's written recording of Paige's medical history as provided by Paige, wherein Paige disclosed she had been sexually abused by appellant six times when she was around nine years old.

According to Fugate, when evaluating a patient following an outcry of sexual abuse, her goals are to "make sure that their body's healthy, to make sure that there's

nothing [she] can help them with, to rule out any infection, [and] to rule out any injury." An evaluation of a patient often includes bloodwork, a urine sample, and full-body examination. Because "[p]robably 95 percent" of children treated "don't have injury no matter what type of assault occurred," Fugate explained that her medical diagnosis and treatment is heavily informed by a patient's oral history. Fugate testified that she explained the purpose of Paige's visit and all it would entail prior to treatment.

## D. Appellant's Statement

Ennis Police Department Detective Brian William Shahan interviewed appellant. A translation of the interview was admitted as an exhibit at trial. When initially confronted with the allegations, appellant stated that maybe Paige had gotten confused because although he recalls drinking one evening and sitting next to her on the couch in the living room after she had fallen asleep, he "didn't do anything else." Then appellant's statement began to vary—"I touched her leg maybe, I don't know"—before appellant averred he had "made a mistake" that night. Appellant stated that he accidentally grabbed onto her leg when he was drunk and "falling asleep" on the couch. In response to whether he remembered "touching her on her vagina with [his] hand," appellant stated, "Well no, I really don't recall on the inside but[] maybe, since I have a hand like this, I do remember that, moving it." Appellant then acquiesced that maybe he was the one lying—not Paige— before confessing he had touched Paige's genitals over her clothing. "[S]he was wearin[g] some short shorts so. . . . I was already drunk[,] and I was sitting there. . . . Yes, yes, I did touch her."

**E. Charge Conference and Verdict**

During a charge conference, appellant requested the inclusion of instructions on the lesser-included offense of aggravated sexual assault of a child, arguing that the offense is the particular act appellant was questioned on and what appellant was originally arrested and initially charged with. The trial court denied appellant's request for a lesser-included offense instruction. The jury returned a guilty verdict, and this appeal followed.

## II. CHARGE ERROR

Appellant's first issue is twofold. Appellant argues the trial court erred in denying his request for a lesser-included jury instruction and by failing to require the jury to unanimously find that two or more acts of sexual abuse occurred over a period that was thirty days or more days in duration.

**A. Standard of Review**

The purpose of the trial court's jury charge is to instruct the jurors on all of the law applicable to the case. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14. In analyzing an alleged jury charge error, our first duty is to determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). We review an alleged jury charge error for abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). If we find error, we then analyze that error for harm. *Id.* The degree of harm necessary for reversal depends on whether the error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)); *Hernandez v. State*, 533 S.W.3d 472, 481 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd).

9

If there is error and the defendant preserved the alleged error, then we must reverse if we find "some harm." *Jordan*, 593 S.W.3d at 346; *Almanza*, 686 S.W.2d at 171. But when, as here, the jury charge error is not preserved, the court will reverse only upon a showing of "'egregious harm,' which occurs when the error created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019) (citing *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015)); *Almanza*, 686 S.W.2d at 171. "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (quoting *Ngo*, 175 S.W.3d at 743). When considering whether a defendant suffered egregious harm, we must consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.*; *Almanza*, 686 S.W.2d at 171.

## B.     Lesser-Included Offense

Courts generally use a two-pronged test to determine whether a defendant is entitled to a jury charge instruction on a lesser-included offense. *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023). The first step of the analysis asks the purely legal question of whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 37.09. If that prong is satisfied, the second step is to determine whether there exists "evidence from which a rational jury could find the defendant guilty of only the lesser

10

offense." *Chavez*, 666 S.W.3d at 776. Anything more than a scintilla of evidence will be sufficient to entitle a defendant to a charge on the lesser offense. *Id.* Meeting this threshold requires more than mere speculation—it requires affirmative evidence directly germane to the lesser-included offense that provides the lesser-included offense as a valid, rational alternative to the greater offense. *Id.* "It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Williams v. State*, 662 S.W.3d 452, 462 n.38 (Tex. Crim. App. 2021) (cleaned up).

A person commits the offense of continuous sexual abuse of a child if "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" and "the actor is 17 years of age or older and the victim is a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b)(1), (2); *Martin v. State*, 335 S.W.3d 867, 872 (Tex. App.—Austin 2011, pet. ref'd). Section 21.02 lists predicate offenses which constitute "acts of sexual abuse" to include the offenses of indecency with a child, TEX. PENAL CODE ANN. § 21.11(a)(1), and aggravated sexual assault. *Id.* § 22.021. Thus, there is no dispute that aggravated sexual assault and indecency with a child are lesser-included offenses under the first prong of the analysis. *See id.*; *Soliz v. State*, 353 S.W.3d 850, 854 (Tex. Crim. App. 2011).

Regarding the second prong, appellant points to Wiedekher's testimony as evidence entitling appellant to a lesser-included offense instruction. Specifically, appellant emphasizes Wiedekher's statement describing the sixth occurrence: "[Paige] said she

11

can't remember anything, but it was like the first time." Appellant argues, "Evidence that the complaining [witness] can't remember anything present[s] more than a scintilla of evidence to establish that the sixth incident did not occur," and without the sixth incident— i.e., the only other incident involving digital penetration—a lesser-included instruction is appropriate. However, we disagree that Wiedekher's testimony wherein she states that Paige disclosed an incident "like the first time" is evidence that there was no second time. To the contrary, its explicit confirmation that there was another incident that was similar to the first incident described by Paige. Similarly, appellant's confession that he touched Paige's vagina over her clothing one drunken evening—when the officers' questioning of appellant included no discussion of the other allegations—is not affirmative evidence warranting a lesser-included offense instruction. *See Chavez*, 666 S.W.3d at 777 ("If the defendant presents evidence that he committed no offense at all or if he presents no evidence, and there is no evidence otherwise raising the issue, a charge on a lesser offense is not required.") (cleaned up); *Williams*, 662 S.W.3d at 462 n.38; *see also Martinez v. State*, No. 10-14-00035-CR, 2014 WL 5094104 (Tex. App.—Waco Oct. 9, 2014, pet. ref'd*) (mem. op., not designated for publication) (rejecting appellant's argument that the failure to receive a lesser included offense jury instruction was error where appellant did not present affirmative evidence). Having reviewed the case and finding no evidence from which a rational jury could find the appellant guilty of *only* the lesser offense of aggravated sexual assault or indecency with a child, we overrule appellant's first issue in part.

## C.    Unanimity

A jury must reach a unanimous verdict in order to convict. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1395 (2020); *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). For purposes of the offense of continuous sexual abuse of a child, the State must prove that the defendant, during a period of thirty or more days, committed two or more acts of sexual abuse. *See* TEX. PENAL CODE ANN. § 21.02; *Navarro v. State*, 535 S.W.3d 162, 165 (Tex. App.—Waco 2017, pet. ref'd). The Texas Court of Criminal Appeals explained that

> the Legislature intended to permit one conviction for continuous sexual abuse based on the repeated acts of sexual abuse that occur over an extended period of time against a single complainant, even if the jury lacks unanimity as to each of the particular sexual acts or their time of occurrence, so long as the jury members agree that at least two acts occurred during a period that is thirty or more days in duration.

*Price v. State*, 434 S.W.3d 601, 605–06 (Tex. Crim. App. 2014).

Here, the trial court's jury charge included an instruction on unanimity consistent with § 21.02(d). Specifically, the jury charge stated:

> Our law provides that a person commits the offense if, during a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and at the time of the commission of each of the acts of sexual abuse, the defendant is 17 years of age or older and the victim is a child younger than 14 years of age.
>
> . . . .
>
> In order to find the defendant guilty of the offense of Continuous Sexual Abuse of [a] Young Child, you are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant or the exact date when those acts were committed. However, in order to find the defendant guilty of the offense of Continuous Sexual Abuse of [a] Young Child, you must agree unanimously that the defendant, during

13

a period that was 30 days or more in duration, between the dates of November 1, 2016[,] and June 1, 2017, committed two or more acts of sexual abuse.

Under the trial court's application paragraph, the court instructed the jury to find appellant guilty of continuous sexual abuse of a child if the jury found beyond a reasonable doubt as follows:

[Appellant] did then and there, during a period that was 30 days or more in duration, to-wit: from on or about the 1st day of November, 2016 through on or about the 1st day of June, 2017, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [Paige], a child younger than 14 years of age, namely, (1) [a]ggravated sexual assault of a child, by intentionally or knowingly contacting or penetrating the sexual organ of [Paige] with the defendant's hand(s) or finger(s); (2) [i]ndecency with a child, with the intent to arouse or gratify the sexual desire of any person, by touching any part of [Paige's] body with the defendant's genitals; or (3) [i]ndecency with a child, with the intent to arouse or gratify the sexual desire of any person, by touching the genitals of [Paige] with the defendant's hand(s) or finger(s), then you will find the defendant guilty of Continuous Sexual Abuse of [a] Young Child as charged in the Indictment.

Appellant argues "the express language does not make clear that the first and last acts must occur thirty or more days apart" from the second act, and likens the charge language to one our sister court analyzed and determined to be erroneous. *See Smith v. State*, 340 S.W.3d 41, 44 (Tex. App.—Houston [1st Dist.] 2011, no pet.). In *Smith*, the application paragraph instructed the jury to find appellant guilty "if two or more acts of sexual abuse occurred 'on or about the 1st day of December, 2007, through the 1st day of September, 2008, which said time period being a period that was 30 days or more in duration.'" *Id.* at 50. The court concluded this instruction did not specifically require a finding that the last act of sexual abuse occurred on at least the 29th day after the day of the first act, and this lack of clarity erroneously "allowed the jury to find appellant guilty so

14

long as two or more acts of sexual abuse occurred between December 2007 and September 2008 regardless of whether the acts occurred at least 30 days apart." *Id.*

Assuming but not deciding that the application paragraph provided similarly unclear instructions on unanimity, for reasons explained below, we conclude the error did not rise to the level of egregious harm.[4] In closing argument, the State informed the jury that the offense charged required unanimity that it had occurred at least thirty days apart and reiterated evidence of two instances of digital to vaginal penetration occurring "months" apart. It is also noteworthy that appellant contended during his closing argument that none of the incidents occurred and that the victim was lying. *See Ruiz v. State*, 272 S.W.3d 819, 826–27 (Tex. App.—Austin 2008, no pet.) (concluding that appellant was not egregiously harmed by the failure to include an instruction regarding unanimity where the defendant argued that he committed none of the alleged misconduct and that the victim was lying to get revenge on the defendant); *see also Jarrett v. State*, No. 10-16-00049-CR, 2017 WL 1957435, at *5 (Tex. App.—Waco May 10, 2017, pet. ref'd) (mem. op., not designated for publication) (same); *Mosqueda v. State*, No. 10-15-00168-CR, 2016 WL 4399973, at *6 (Tex. App.—Waco Aug. 17, 2016, no pet.) (mem. op., not designated for publication) (same). Moreover, we presume that the jurors read and understood the charge as a whole, which clearly instructed the jury to find appellant guilty if he committed the offense "during a period that was 30 days or more in duration." *See Branum v. State*, 535 S.W.3d 217, 229 (Tex. App.—Fort Worth 2017, no pet.); *see also*

---

[4] The record reflects that appellant did not raise this objection to the jury charge in the trial court; thus, the record must show egregious harm for appellant to prevail on appeal. *See Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020).

15

*Guerra v. State*, No. 13-21-00419-CR, 2023 WL 3016188, at *10 (Tex. App.—Corpus Christi–Edinburg Apr. 20, 2023, pet. ref'd) (mem. op., not designated for publication). We overrule appellant's first issue in its entirety.

### III.    MEDICAL RECORDS

By his second issue, appellant argues that the trial court abused its discretion in admitting Paige's medical records, which included her statement to Fugate. Specifically, appellant contends the trial court erred in overruling his objections on hearsay and the Confrontation Clause. *See* U.S. CONST. amend. VI; TEX. R. EVID. 802.

### A.    Standard of Review

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020); *Patterson v. State*, 606 S.W.3d 3, 33 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd). A trial court abuses its discretion when its decision lies outside the "zone of reasonable disagreement." *Wells*, 611 S.W.3d at 427; *Patterson*, 606 S.W.3d at 33.

### B.    Hearsay

Appellant objected to the admission of the medical records on the basis of hearsay. *See* TEX. R. EVID. 801. Hearsay is a written or oral statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted; and as such, hearsay is inadmissible evidence unless expressly excepted or excluded from this general rule by statute or the rules of evidence. *See* TEX. R. EVID. 801(a), (d), 802. "If the out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate, then the statement is

16

hearsay." *Coble v. State*, 330 S.W.3d 253, 289 n.101 (Tex. Crim. App. 2010) (quoting *Bell v. State*, 877 S.W.2d 21, 24 (Tex. App.—Dallas 1994, pet. ref'd)); *Jones v. State*, 466 S.W.3d 252, 263 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). There are, however, several exceptions to the hearsay rule. *See* TEX. R. EVID. 803; *Castillo v. State*, 573 S.W.3d 869, 877 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see also White v. State*, 549 S.W.3d 146, 160 (Tex. Crim. App. 2018) (Keller, P.J., concurring) ("For hearsay, . . . which is a rule of exclusion, we have held that the opponent of the evidence bears the burden to show that evidence is hearsay, but once hearsay is shown, the proponent bears the burden of establishing an exemption or exception to the hearsay rule.").

Rule 803(4) is one such exception.[5] Rule 803(4) concerns statements made for the purpose of medical diagnosis or treatment. *See* TEX. R. EVID. 803(4). The record demonstrates that Paige was transported to the hospital in the days following her outcry. Fugate testified she explained to Paige the purpose of her visit and then collected Paige's patient history for medical diagnosis and treatment purposes. *See Murray v. State*, 597 S.W.3d 964, 974 (Tex. App.—Austin 2020, pet. ref'd) (concluding a sexual assault examination was conducted for the "primary purpose of medical treatment" irrespective of whether the nurse worked closely with law enforcement); *see also Westbrook v.* State, No. 10-19-00119-CR, 2021 WL 3773474, at *9 (Tex. App.—Waco Aug. 25, 2021, pet.

---

[5] This exhibit concerns two layers of hearsay. The records themselves are admissible through the business records exemption, *see* TEX. R. EVID. 803(6), and the complainant's statement contained within the records are admissible for reasons discussed below. *See id.* R. 805 (providing that hearsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in the Texas Rules of Evidence).

ref'd) (mem. op., not designated for publication) (concluding, where a medical provider testified similarly, it was at least within the zone of reasonable disagreement that the minor complainant's history was taken for the purpose of medical treatment or diagnosis, and the trial court did not abuse its discretion in admitting the forensic nurse's testimony or child's medical records documenting the same). Moreover, a child's capacity to tell the truth is a vital component of our admission analysis, and we may "presume" that Paige was of sufficient age to possess an implicit awareness that Fugate's "questions [were] designed to elicit accurate information and that veracity w[ould] serve [her] best interest." *See Taylor v. State*, 268 S.W.3d 571, 589 (Tex. Crim. App. 2008); *see also Nutall v. State*, No. 10-19-00359-CR, 2021 WL 3773558, at *2 (Tex. App.—Waco Aug. 25, 2021, no pet.) (mem. op., not designated for publication) (concluding the age of the complainants, two twin fourteen-year-old girls, weighed in favor of the admissibility of the girls' statements to the forensic nurse). Therefore, we conclude that the trial court did not abuse its discretion by admitting the medical records, and we overrule appellant's objections to the admission of this evidence on this basis. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) ("[T]he appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made."); *see also Canales v. State*, No. 13-16-00252-CR, 2018 WL 2252719, at *5 (Tex. App.—Corpus Christi–Edinburg May 17, 2018, no pet.) (mem. op., not designated for publication).

## C. Confrontation Clause

Appellant next contends that his rights under the Confrontation Clause were violated. *See* U.S. CONST. amend. VI.

"Under the Confrontation Clause of the Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) (quoting *Pointer v. Texas*, 380 U.S. 400, 403 (1965)); *see* U.S. CONST. amend. VI. We address a Confrontation Clause challenge by asking: (1) whether the defendant had a prior opportunity to cross-examine the absent declarant, and (2) whether the statement at issue is testimonial in nature. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Coronado v. State*, 351 S.W.3d 315, 323 (Tex. Crim. App. 2011).

A general hearsay objection does not preserve a Confrontation Clause complaint for appeal. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (noting that appellant's "arguments about hearsay did not put the trial judge on notice that he was making a Confrontation Clause argument" and finding that appellant waived the latter because "the trial judge 'never had the opportunity to rule upon' this rationale"); *Martinez v. State*, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002) (noting that, for an issue to be preserved on appeal, the issue on appeal must comport with the objection made at trial); *see also* TEX. R. APP. P. 33.1(a). Therefore, appellant did not preserve this issue.

Nonetheless, even assuming but not deciding that the issue has been preserved, we find it lacks merit. First, there is no absent declarant in this instance. Paige told Fugate what occurred, which Fugate then documented in her report. Fugate and Paige testified and were each cross-examined at trial. *See Murray*, 597 S.W.3d at 975 ; *see also Puente v. State*, No. 13-20-00014-CR, 2021 WL 2461173, at *3 (Tex. App.—Corpus Christi–

19

Edinburg June 17, 2021, pet. ref'd) (mem .op., not designated for publication) (concluding that the trial court's admission of the nurse's testimony regarding complainants' statements in the medical reports did not violate the Confrontation Clause because the complainants were subject to cross-examination at trial). Additionally, business records created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial and medical records created for treatment purposes are generally considered non-testimonial. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2, 324 (2009); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd) (holding medical records were non-testimonial); *Sullivan v. State*, 248 S.W.3d 746, 750 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (observing that Texas courts have held that medical reports and business records are non-testimonial in nature); *see also Puente*, 2021 WL 2461173, at *3 (same).

As noted *supra*, Paige's patient history was collected at the hospital for treatment purposes, and both Paige and Fugate were cross-examined. Under these facts, the admission of Paige's medical records containing her written patient history did not violate the Confrontation Clause, and the trial court did not abuse its discretion in permitting their admission. *See Sullivan*, 248 S.W.3d at 750; *see also Crawford*, 541 U.S. at 68 (explaining that only "testimonial evidence" violates the Confrontation Clause); *Carpenter v. State*, No. 11-15-00323-CR, 2018 WL 3763773, at *2 (Tex. App.—Eastland Aug. 9, 2018, no pet.) (mem. op., not designated for publication) (holding that, where the only evidence indicated that the medical records were created solely for treatment purposes, the records were not testimonial and did not violate appellant's right to confrontation);

20

*Palacios v. State*, No. 02-09-00332-CR, 2010 WL 4570072, at \*5 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) (same). We overrule appellant's second issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA<br>
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
31st day of August, 2023.

21